80-396

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

JOHN H. TITECA and CLARA L. TITECA,
Individually and as husband and wife,

Plaintiff and Appellant,

vs.

STATE OF MONTANA, ACTING BY AND THROUGH
THE DEPARTMENT OF FISH, WILDLIFE, and
PARKS,

Defendant and Respondent.

Appeal from:   District Court of the Sixth Judicial District,
               In and for the County of Sweet Grass.
               Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        J. Brian Tierney, Butte, Montana

    For Respondent:

        F. Woodside Wright, Helena, Montana

Submitted on briefs: July 9, 1981

Decided: September 15, 1981

Filed: SEP 15 1981

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiffs, John H. Titeca and Clara L. Titeca, appeal from the summary judgment granted in the District Court, Sixth Judicial District, Sweet Grass County, to defendant, the State of Montana, acting by and through the Department of Fish, Wildlife and Parks (hereinafter department).

The property involved in this matter is located on the Boulder River within Section 15, Township 2 South, Range 13 East, Sweet Grass County, Montana. The site is approximately 20 miles south of Big Timber, Montana, and approximately 3 miles east of McLeod, Montana.

In 1954, by a recorded document entitled "Deed of Right of Way over Existing Road", W. T. Rule, Jr. and Edith Rule, his wife, predecessors in interest to the department, transferred an interest in property to Annice B. Abarr (Somers), predecessor in interest to plaintiffs and appellants, John H. Titeca and Clara L. Titeca. The document states:

> "[T]he said parties of the first part . . .
> do hereby grant and convey unto said party of
> the second part, her heirs and assigns; a
> permanent right of way, twenty feet wide, for
> use as a private road across and over a strip
> of land in Sweet Grass County, Montana, more
> particularly described as that land now being
> used as a private road over and across a twenty
> foot strip of land . . ."

This right of way over the Rule property provided access to the Abarr property. The road still provides the only access to Titeca's property (formerly Abarr's property).

Through various mesne conveyances, the department acquired the Rule property (servient estate) and Titeca acquired the Abarr property (dominant estate). The department intends to pave the road and open it to the public. The road will serve a dual purpose: it will provide a route to the Titeca property and to the proposed Boulder Forks fishing access site, located on the department's land.

-2-

Titeca brought an action seeking damages of $500,000 and an injunction to prevent the department from developing and using the department's property as a public fishing access site, and to prevent the paving of the road.

Titeca's complaint was based on a claimed fee title to the roadway, allegations of improperly made environmental studies, of creating a nuisance, of exposing Titeca to personal liability, and of maintaining a trespass, disturbing peace and contentment, depreciating land values and taking without just compensation. The complaint was supported by the affidavit of John Titeca which alleged that he owned fee title in the right of way and that "irreparable injuries, trespass, damages and losses" would occur by reason of the proposed use of the right of way and development of the access site.

A hearing was held and testimony taken from John Titeca and the department's regional parks manager, Ray Berntsen. No decision was rendered at the hearing.

Subsequently, the department moved for summary judgment. The motion was supported by affidavits from Don Abarr (husband of Annice Abarr when the deed of right of way was granted) and Annice Abarr (Somers). Both affidavits indicated the deed was intended to provide only an easement from the Rules. The motion was further supported by an environmental assessment and a preliminary environmental review together with affidavits, made by a department program manager, Ron Aasheim, and a department civil engineer, Walt Anderson. Completion of the environmental assessment was apparently required to qualify the purchase for matching federal funds. The conclusions of both affidavits were that the environmental

-3-

studies were properly made. Each study concluded that the impacts of the project would be minor and each resulted in a finding that the drafting of an environmental impact statement was not necessary.

In opposition to the motion for summary judgment, Titeca introduced affidavits from Edith Rule, one of the original grantors, and, another from Annice Abarr (Somers), the original grantee. Thus, each party submitted an affidavit from Annice Abarr in support of their position.

The District Court found the department had met its burden and that there were no genuine issues of material fact. Summary judgment was entered as a matter of law on behalf of the department.

We affirm the judgment of the District Court.

In granting summary judgment, the District Court ordered:

"1. That title to the property in question is quieted in the State of Montana, Department of Fish, Wildlife, and Parks, subject to an easement for roadway purposes held by plaintiffs.

"2. That defendant acted under proper authority in acquiring the property in question and did so without depriving plaintiffs of their constitutional right of due process.

"3. That defendant made all necessary and proper environmental assessments before acquiring the property and before undertaking the project thereon.

"4. That defendant's acquisition, management, and use of the property is not a taking of plaintiff's property without compensation."

It is this order of the District Court which we review upon appeal.

An appropriate statement of the law with regard to summary judgment can be found in Byrd v. Bennett, White and American Title & Escrow of Billings (1981), ___ Mont. ___, ___ P.2d ___, 38 St.Rep. 1083:

-4-

"In recent opinions, this Court explained the purpose of summary judgment under Rule 56, M.R.Civ.P., and we outlined the proper procedure for entry of summary judgment. See, Anaconda Co. v. General Acc. Fire & Life (1980), ___ Mont. ___, 616 P.2d 363, 37 St.Rep. 1589; Reaves v. Reinbold (1980), ___ Mont. ___, 615 P.2d 896, 37 St.Rep. 1500. Under Rule 56(c), M.R.Civ.P., summary judgment shall be entered if '. . . the pleadings, depositions, answers to interrogatories, and admissions on file [together with the affidavits if any] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' The purpose of summary judgment is to encourage economy through the elimination of unnecessary trial, delay and expense, but the procedure is never to be a substitute for a trial if a material factual controversy exists. Engebretson v. Putnam (1977), 174 Mont. 409, 571 P.2d 368. In a summary judgment proceeding, the formal issues presented by the pleadings are not controlling. The question to be decided in a motion for summary judgment is whether there exists a genuine dispute over material facts. The party moving for summary judgment has the burden of showing the complete absence of material factual questions. The proof proffered by the movant is closely scrutinized. The party opposing the motion may block summary judgment by offering proof that a dispute exists regarding facts material to the claim for relief." 38 St.Rep. at 1084.

It is in light of this standard that we must review the holding of the District Court.

1. Did the District Court err when it entered summary judgment quieting title to the roadway in the department subject to an easement for roadway purposes held by plaintiffs?

To resolve this issue we must determine what interest Titeca has in the disputed right of way. The language of the 1954 conveyance quoted earlier is sufficiently clear on this point. It is entitled "Deed of Right of Way Over Existing Road." Titeca maintains that this instrument conveys a fee interest in the roadway or, in the alternative, an exclusive easement under the terms of which Titeca alone is allowed to use the roadway. The department contends that the instrument conveys nothing more than an ordinary, nonexclusive easement.

-5-

The language of the instrument creating Titeca's interest in the roadway is, on its face, clear and unambiguous:  the instrument conveyed "a permanent right of way . . . for use as a private road . . ."  The grant of an easement is the grant of a use and not a grant of title to the land.  Bolinger v. City of Bozeman (1972), 158 Mont. 507, 511, 493 P.2d 1062, 1064.  The instrument conveys an easement.

Although Titeca directs us to numerous cases involving strips of land where it was held that a fee interest was either granted or reserved, each case is easily distinguishable.  In most instances, this can be accomplished on the basis of the language of the instruments involved.

In the course of the litigation, neither party indicated who has paid taxes on the roadway since 1954.  Although that information would not be entirely determinative of the issue of fee or easement, it would provide some insight into which one of the parties owned the road.

Titeca's alternative assertion—that if he does not have a fee interest in the road, he at least holds an exclusive easement—is  the stronger of his two arguments.  We find, however, that Titeca holds nothing more than an ordinary easement.

Titeca bases his assertion that he holds an "exclusive" easement on the use of the words "private road" in the 1954 document.   "An 'exclusive easement' is an unusual interest in land; it has been said to amount almost to a conveyance of the fee."  2 Thompson on Real Property (1980), § 426, at 654-655.  "No intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention."  City of Pasadena v. California-Michigan Land & W. Co. (1941), 17

Cal.2d 576, 110 P.2d 983, 985. The mere use of the words "private road" is not a clear indication of an intent to create an "exclusive" easement.

Furthermore, section 70-17-106, MCA, states "[t]he extent of a servitude is determined by the terms of the grant . . . by which it was acquired." In other words, "[w]here an easement is claimed under a grant . . . the extent of the rights granted depends upon the terms of the grant,. . . properly construed. If it is specific in its terms, it is decisive of the limits of the easement." 25 Am.Jur.2d Easements and Licenses, § 73, at 479. "[N]o use may be made of the right of way, different from that established at the time of its creation, so as to burden the servient estate to a greater extent than was contemplated at the time of the grant." 25 Am.Jur.2d, supra, § 77, at 483. The purpose of the easement was, and is, to give Titeca access to his land. On Titeca's part, the road is "private" to the extent that no person other than Titeca and those authorized by him can use it to get to Titeca's land, located across the river from the department's land.

There can be no doubt that after granting the easement, the grantors, their successors in interest, and those authorized by them, had the right to use the road over what is now the department's land. The department, as successor in interest to the grantors has the same right.

Nothing in the department's proposed use of the roadway appears to interfere with Titeca's right to use it to get to his property. It is a well-settled rule that "[t]he owner of the servient tenement may make use of the land in any lawful manner that he chooses, which use is not inconsistent with and does not interfere with the use and right reserved

-7-

to the dominant tenement or estate." City of Missoula v. Mix (1950), 123 Mont. 365, 372, 214 P.2d 212, 216. Mix involved a reserved easement, but for the purposes of defining the department's rights with regard to the road, its principles are applicable to the present case. As yet there is no evidence that the department's proposed use of the road—paving it and opening it to the public—will interfere with Titeca's right to use it to get to his land. The fishing access site was not open at the time of the lower court proceedings and any allegations that the public's use of the road would interfere with Titeca's use were mere speculation. This Court cannot declare the department's proposed use to be inconsistent with Titeca's easement on the basis of speculation.

The recent case of Macpherson v. Smoyer (1980), _____ Mont. ____, 622 P.2d 188, 37 St.Rep. 2079 is easily distinguishable. First, the words of the instrument in that case clearly established that part of the easement was for the "exclusive use" of the plaintiff and part of it was for use "in common" with the defendant. Macpherson, 622 P.2d at 192, 37 St.Rep. at 2084. Second, defendant's predecessor in interest was in the habit of asking plaintiff's permission before using that portion of the easement reserved for plaintiff's exclusive use. In the case at bar, the department's predecessors in interest did not have to ask permission before using the road in dispute here. This is a strong indication that the easement was never intended to be for Titeca's exclusive use, except in the sense that he alone could use it to get to his land. Third, the principal type of interference complained of in Macpherson was that defendants were parking their vehicles on plaintiff's exclusive easement without permission.

-8-

In the case at bar, there is a separate area set aside for parking and there is no indication that the public will use the road for anything other than access to and from the fishing site.

2. Did the trial court err when it found that the department acted under proper authority in acquiring the property in question and did so without depriving Titeca of his constitutional right of due process?

The authority of the department to acquire property for recreational purposes is specifically stated in both the constitution and the statutes of the State of Montana. The 1972 Mont. Const., Art. IX, § 4, states: "The legislature shall provide for . . . the acquisition . . . of . . . recreational areas . . . and for their use and enjoyment by the people." Pursuant to this constitutional directive, the legislature has stated several times the authority of the department to acquire lands. Section 23-2-103(4), MCA, provides that the department may "acquire . . . and develop outdoor recreational areas and facilities and land and waters and interests in land and waters for such areas and facilities." Further, section 23-1-102, MCA, authorizes the department to purchase areas to be held as state recreational areas. Finally, section 87-1-209(1)(c), MCA, states that the department may purchase lands for the purpose of public fishing areas. Thus, it is clear the department acted lawfully and under proper authority in acquiring the property.

Titeca further alleges, however, that he was entitled to but did not receive notice and a hearing before the department acquired the parcel of land over which his easement runs. This omission, he maintains, deprives him of his property without due process of law.

-9-

We have already determined that Titeca does not have a
fee interest in the road itself.  He has, instead, an
ordinary easement over the land.  Thus, because Titeca holds
an easement, he has a property interest in the right of way
that runs through the land acquired by the department.  As
we pointed out earlier, however, there is no indication that
the department has in the past or will in the future interfere
with Titeca's right to use the road.  It follows that Titeca
has not been deprived of the property interest--the easement--
which he holds in the road.

In making his argument on issue no. 2, Titeca alleges
that the proposed use of the property (i.e., the operation
of the fishing access site) will create a private nuisance
and expose him and his family to personal liability, disturb
their peace and contentment, and depreciate the value of
their ranch and residence.  The access site was not in use
at the time of the hearing in the lower court.  That court
could hardly have held that Titeca had been deprived of his
property without due process on the basis of his speculation
that a fishing access site across the river from his ranch
would have a disturbing effect upon his family and his
property.  As yet, he has suffered no deprival of his
property, let alone a deprival of his property without due
process.

3.  Did the trial court err by ordering that the department
had made all necessary and proper environmental assessments
before acquiring the property and before undertaking the
project thereon?

In support of his position, Titeca asserts that no
public hearing was held with regard to the pre-
liminary  environmental review and the environmental assess-
ment.  He cites no statute or regulation which requires a

-10-

public hearing, before, during, or after the preparation of a preliminary environmental review or an environmental assessment, both of which studies indicate that no environmental impact statement is warranted. There are provisions alluding to public hearings in A.R.M. § 12.2.407(1)(b), and A.R.M. § 12.2.419. Both of these provisions, however, relate to environmental impact statements and are therefore not applicable to the case at bar. We can find no language in either the Montana Environmental Policy Act, section 75-1-101, et seq., MCA, or the Montana Administrative Procedure Act, section 2-4-101, et seq., MCA, which would indicate that in a preliminary environmental review a hearing is required.

Furthermore, Titeca's attack upon the department's preparation of the environmental studies is collateral. The department's method of conducting the environmental studies is not germane to the principal issue in this action, that issue being the nature of Titeca's interest in the roadway. To demonstrate that Titeca's contention is a collateral attack, we point out that whether the department conducted the studies improperly or whether it should or should not have required an environmental impact statement has no bearing on, and would not determine the meaning of, the right-of-way instrument. It is an issue inappropriate for the District Court's consideration in this suit, and for ours, because the question of the department's impact on the environment in using the land for a fishing access is extraneous to the issue of the nature of Titeca's interest in the roadway. See, Intermill v. Nash (1938), 94 Ut. 271, 75 P.2d 157, 162.

4. Did the trial court err in determining that the department's acquisition, management, and use of the property

-11-

is not a taking of Titeca's property without just compensation?

In our discussion of issue no. 2, we said that Titeca has not yet suffered a deprival of his property in regard to either his easement or his ranch land. We are now asked to determine whether the department's use of its land "damages" Titeca's property so as to entitle him to compensation under 1972 Mont. Const., Art. II, § 29, which provides: "Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner." (Emphasis added.)

Any damages alleged by Titeca at this time are purely speculative. To resolve this issue, we need only repeat that Titeca has no right to compensation until his property has been taken or damaged. Bakken v. State (1963), 142 Mont. 166, 382 P.2d 550, 552.

We affirm the summary judgment entered by the District Court.

_____
                                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
            Justices

-12-



approach sign

entry sign — existing cattleguard

existing gravel trail

road

barriers

parking

latrine

parking

sign (private ranch)

property line

existing bridge

private ranch

BOULDER FORK

Bar Scale... 0' 10 20 50'

North ➡

BOULDER

-13-