No. 88-589

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

JOHN W. STRAHAN, EVELYN STRAHAN,
and JERRY W. STRAHAN,

        Plaintiffs and Respondents,

   -vs-

DAVID W. BUSH and PAMELA F. BUSH,
et al.,

        Defendants and Appellants.

_____

APPEAL FROM:  District Court of the Third Judicial District,
In and for the County of Granite,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sol & Wolfe; Michael Sol, Missoula, Montana

    For Respondent:

        Boone, Karlberg & Haddon; David J. Dietrich, Missoula,
Montana

_____

Submitted on Briefs:  March 23, 1989

Decided:  May 3, 1989

Filed:

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendants, David W. and Pamela F. Bush (the Bushes), appeal from a permanent injunction granted in the District Court, Third Judicial District, Granite County, Montana, the Honorable Ted L. Mizner presiding, to the plaintiffs, John W. Strahan, Evelyn Strahan and Jerry Strahan (the Strahans). The injunction ordered the Bushes to refrain from interfering with the Strahans' ingress and egress from their property. We affirm.

The property involved in the matter is located in Granite County, south of Interstate 90 near Drummond, Montana. In 1977, the parties purchased their respective properties from a common owner, Maxine Burruss. Contained in the conveyance to the Bushes, Burruss reserved an easement "[f]or purposes of providing ingress and egress to the above described land which easement shall be over and across the existing road . . . " The easement right granted by virtue of the deed provided the Strahans the only access to their sole residence.

At the time of the conveyances, a locked gate existed on the road easement. Burruss controlled the gate and provided the owners access with a combination to the lock. In 1979, the Strahans replaced the combination lock with a key-lock and provided other property owners with keys. The Strahans notified all concerned parties and asked for their cooperation. Shortly thereafter, the Strahans opened the gate. Except for the 1980 and 1981 hunting seasons, the gate remained open for approximately four years without objection from other property owners who used the road. Additionally, the gate was closed when no one was in attendance on any of the properties. As to the operation of the gate, the other property owners testified to a "gentleman's agreement," stating that what was best for the

Strahans was best for them. In 1984, the Bushes unilaterally closed the gate, initiating the present dispute.

The Strahans reside on the property year-round and have maintained the private road, including snow removal during the winter months. Also, Evelyn Strahan suffers from a back condition which makes opening the gate extremely difficult, if not impossible.

The Bushes are residents of Arizona and spend a few weeks during the summer camping on their property and lease the property to local ranchers for cattle grazing purposes. At trial, David Bush testified that the gate is a necessary part of the grazing operation to prevent cattle from straying and is also needed to protect against acts of vandalism on their property.

On July 2, 1987, the Strahans filed a verified complaint in the District Court, requesting a temporary restraining order and a permanent injunction to enjoin the Bushes from closing the gate. The temporary restraining order was granted on July 31, 1987. After the hearing, the District Court, on July 25, 1988, issued an order permanently restraining the Bushes from interfering with the Strahans' unrestricted access to their property. The court's order stated that the Bushes may install a cattle guard at their own expense under the gate controlled by the Strahans.

We rephrase the Bushes' issues as follows:

1. Did the District Court err in construing the terms of the easement which granted the Strahans' ingress and egress?

2. Were all necessary parties joined?

3. Does the cattle guard impose an additional burden not contemplated by the easement?

On appeal, we limit our review to the question of whether the District Court abused its discretion in granting the injunction. Sampson v. Grooms (Mont. 1988), 748 P.2d 960, 45 St.Rep. 133; Madison Fork Ranch v. L & B Lodge Pole

3

Timber Products (1980), 189 Mont. 292, 615 P.2d 900. To determine if an abuse is present, we review the scope of the injunction. The extent of an easement is governed by § 70-17-106, MCA:

> The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired.

In other words,

> [w]here an easement is claimed under a grant . . . the extent of the rights granted depends upon the terms of the grant, . . . properly construed . . . If it is specific in its terms, it is decisive of the limits of the easement.

Titeca v. State By And Through Dept. Of Fish (Mont. 1981), 634 P.2d 1156, 1159, 38 St.Rep. 1533, 1537, citing 25 Am.Jur.2d, Easements and Licenses, Sec. 73, at 479. However, the instant case involves an easement described generally as "an easement for purposes of providing ingress and egress to the above described land which easement shall be over and across the existing road . . . " Given the ambiguous nature of the easement, the court must exercise a different role:

> If the easement is not specifically defined, it need only be such as is reasonably necessary and convenient for the purpose for which it was created. It is sometimes held . . . where the grant or reservation of an easement is general in its terms, that an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to that particular course or manner.

25 Am.Jur.2d, Easements and Licenses, Sec. 73, at 479. What may be considered reasonable is determined in light of the situation of the property and the surrounding circumstances.

Historically, the gate remained closed to discourage trespassers and, in fact, existed when the parties purchased their properties, subject to the mutual lock agreement. The

Bushes allege that the Strahans continued the key-lock arrangement in 1979, and coordinated the cooperation of other landowners to keep the gate closed. Because of their use, the Bushes contend that the Strahans waived any claim of a restricted access and are therefore estopped from asserting that the gate should remain open. Finally, the Bushes desire to use the property for cattle grazing, necessitating a closed gate.

On the other hand, the Strahans assert that they took control of the gate in 1979, and continued to monitor access to the easement. The gate was closed during the 1980 and 1981 hunting seasons, or during periods when the Strahans were away from the property for an extended period of time. Further, the other property owners agreed to allow the Strahans to control the gate because the Strahans reside on the property year-round. In addition, the Strahans assert that Evelyn Strahan cannot open the gate due to her back condition.

In City of Missoula v. Mix (1950), 123 Mont. 365, 372, 214 P.2d 212, 216, this Court set forth the limitations on the right of an owner of land subject to an easement to interfere with the use of the reserved easement, stating:

> The owner of a reserved easement may use it to the full use of the right retained. The owner of the servient tenement may make use of the land in any lawful manner that he chooses, which use is not inconsistent with and does not interfere with the use and right reserved to the dominant tenement or estate.

See also, Flynn v. Siren (1986), 219 Mont. 359, 711 P.2d 1371, and Titeca, supra. While we acknowledge the Bushes' interest of leasing their property for a cattle grazing operation, nonetheless, the gate unreasonably interferes with the Strahans' reserved easement rights. As found by the lower court, Evelyn Strahan cannot open the gate without assistance, and is therefore restricted in her movement from

the property. Also, the gate must be kept open during the winter months to facilitate snow removal and for maintenance of the road. Because the road is the only access to the Strahans' sole residence, the District Court denied the Bushes' contention that the gate should remain closed. Accordingly, the District Court fashioned an injunction which allowed the Strahans' ingress and egress from their property, and ordered an appropriate solution to address the Bushes' interest of leasing the property for a cattle grazing operation. To further minimize the impact of his decision, the District Court admonished the Strahans to respect the rights of the Bushes and cooperate by closing the gate whenever it is reasonable to do so. We find the scope of the injunction is proper.

Next, the Bushes contend the court did not join all parties necessary to the controversy. Rule 19(a), M.R.Civ.P., provides:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . .

Whenever feasible, persons materially interested in the subject of an action should be joined as parties so they may be heard and a complete disposition made. See, Commission Comments, Rule 19(a), M.R.Civ.P. However, no evidence exists to support the Bushes' assertions that the other property owners are indispensable. The easement subject to this action lies completely within the perimeter of the land owned

6

only by the Bushes and the Strahans. We find that the District Court rendered a binding decision between the parties.

Finally, the Bushes argue the cattle guard provided for by the District Court's order imposes an additional burden not contemplated by the original easement. While it may be that the easement did not specifically contemplate the construction of a cattle guard, nonetheless, we note that a court sitting in equity causes is empowered to determine the questions involved in the case and do complete justice. Hames v. City of Polson (1950), 123 Mont. 469, 215 P.2d 950. "The court has all of the power requisite to render justice between the parties. . ." Rase v. Castle Mountain Ranch, Inc. (Mont. 1981), 631 P.2d 680, 687, 38 St.Rep. 992, 1000.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7