No. 93-135

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

OWEN GABRIEL and CHRIS GABRIEL,
ROBERT McTAGGART, SUZY MEANS,
AMERICAN MINING CO., ALLEN
BLANCHARD and DORA BLANCHARD,

Plaintiffs and Appellants,

-vs-

DAVID F. WOOD,

Defendant and Respondent.

FILED

OCT 19 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis & Clark,
                The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Carl A. Hatch and John C. Doubek; Small, Hatch,
            Doubek & Pyfer, Helena, Montana

        For Respondent:

            Ann L. Smoyer; Smoyer Law Firm, Helena, Montana

        For Amicus Black Tower Partnership:

            P. Keith Keller; Keller, Reynolds, Drake
            Johnson & Gillespie, Helena, Montana


                    Submitted on Briefs:  September 9, 1993

                            Decided:  October 19, 1993

Filed:


_____
                Clerk

Justice Xarla M. Gray delivered the Opinion of the Court.

Owen and Chris Gabriel and Allen and Dona Blanchard appeal from the findings of fact, conclusions of law and order entered by the First Judicial District Court, Lewis and Clark County, declining to enjoin David Wood from maintaining gates across a road leading to their properties. We affirm.

The following issues are raised on appeal:

1. Did the District Court err by declining to enjoin Wood from maintaining gates across the common road?

2. Is Wood entitled to reasonable attorney's fees on appeal?

Owen and Chris Gabriel (the Gabriels) own several unpatented mining claims in Lewis and Clark County. Owen, who has operated the mining claims for more than forty years, has gained access to them by using a road referred to herein as the common road.

In 1986, Allen and Dona Blanchard (the Blanchards) purchased property from Dwight Capp, Glen Drake and Keith Stokes. As part of the transaction, the Blanchards were also granted access rights for ingress/egress and utilities over other land owned by the three men. The access way extended 30 feet on either side of the center line of the common road.

Later in 1986, David Wood (Wood) purchased property (referred to as the 1986 property) from Capp, Drake and Stokes to pasture horses. The 1986 property, located southeast of the Blanchards' property, is crossed by the common road from northwest to southeast. Capp, Drake and Stokes reserved a road and utility right-of-way along the common road crossing the 1986 property which

2

corresponded to the access rights they had granted to the Blanchards. Wood constructed a gate across the common road at the 1986 property's southern boundary.

Wood purchased additional land from Capp, Drake, and Stokes in February of 1988. That land bordered a portion of the 1986 property's southern boundary. As part of the 1988 transaction, Wood also obtained an access and utility easement over the southeast 1\4 of Section 34 and southwest 1\4 of Section 35, Township 11 North, Range 5 West, M.P.M. The easement was described as extending thirty feet on either side of the center line of "the present road" and provided that the right-of-way was to be kept free of gates or other obstructions.

In August of 1988, the Gabriels and other named plaintiffs filed suit against Wood, claiming that they had acquired an easement by prescription across the 1986 property via the common road and seeking damages resulting from Wood's construction of the gate. They requested a temporary restraining order to prevent Wood from restricting their right of access to the common road and a show cause hearing to determine whether a preliminary injunction should be issued to the same effect during the pendency of the action.

The District Court issued a temporary restraining order and scheduled a show cause hearing for August 31, 1988. On that date, however, the parties discussed possible resolutions of their dispute and stipulated that the temporary restraining order continue in full force and effect until further order of the court.

3

Efforts to resolve the matter apparently failed. In July of 1992, plaintiffs again requested a show cause hearing to determine whether a preliminary injunction should be issued. At that time, the Blanchards were joined as plaintiffs on the basis that their "easement" rights also had been adversely affected by Wood's construction of the gate.

The District Court treated the show cause hearing held on July 30, 1992, as a hearing on the merits of the parties' claims. The Gabriels and Blanchards were the only plaintiffs to appear. The court issued findings of fact, conclusions of law and judgment, determining that the construction of the gate violated the easement restrictions contained in Wood's 1988 deed. It ordered the removal of all gates that obstructed the common road at the 1986 property's southern boundary.

The District Court denied Wood's subsequent motion to amend its findings, conclusions and order but scheduled a second evidentiary hearing to be held in January of 1993. The court issued superseding findings of fact, conclusions of law, and judgment in February of 1993. It determined that the Gabriels and Blanchards (referred to collectively as appellants) had a right to use the common road, but that Wood was entitled to maintain gates across it provided appellants retained reasonable access. The court dismissed the remaining plaintiffs, who again did not appear, with prejudice. The Gabriels and Blanchards appeal.

Did the District Court err in declining to enjoin Wood from maintaining gates across the common road?

4

Following the initial evidentiary hearing, the District Court found that the road referred to in the 1988 deed was the common road. Because the 1988 deed specifically prohibited Wood from constructing gates across it, the court determined that Wood was illegally restricting appellants' access to the common road and ordered Wood to remove the gate.

No certificate of survey or other evidence was presented at the initial hearing showing the location of the property and access rights at issue. After such evidence was submitted at the second evidentiary hearing, the District Court found that the road referred to in the 1988 deed was not the common road and, therefore, that the restriction against constructing gates did not apply to that road. Although the court determined that appellants had a right to use the common road, it concluded that Wood was entitled to maintain gates across it so long as appellants had reasonable access. The court also required Wood to meet certain standards to ensure reasonable access and, on that basis, denied appellants' request to enjoin Wood from maintaining a gate across the common road.

The grant or denial of an injunction is within the discretion of the district court: we will not reverse the court's denial of an injunction unless an abuse of discretion is shown. Curran v. Department of Highways (Mont. 1993), 852 P.2d 544, 545, 50 St.Rep. 450, 451.

Appellants first contend that they were entitled to an injunction because the presence of a gate across the common road

changed the nature of their easement from "prescriptive" to "permissive," relying on Finley v. Rutherford (1968), 151 Mont. 488, 444 P.2d 306; Cope v. Cope (1971), 158 Mont. 388, 493 P.2d 336; and Larson v. Burnett (1972), 158 Mont. 421, 492 P.2d 921.

At issue in Finley, Cope, and Larson was the existence of an easement by prescription. To establish such an easement, open, notorious, exclusive, adverse, continuous and uninterrupted use of the right-of-way for the statutory period must be proven. Public Lands v. Boone and Crockett (Mont. 1993), 856 P.2d 525, 527, 50 St.Rep. 794, 795. Adverse use is presumed, however, if all other elements of the claim are established. Parker v. Elder (1988), 233 Mont. 75, 78, 750 P.2d 292, 294. In the context of an alleged prescriptive easement, the presence of a gate across a road is evidence of permissive use, rebutting the presumption of adverse use. Parker, 758 P.2d at 294.

These well-established principles regarding prescriptive easements do not apply here, however, as neither the Gabriels' nor the Blanchards' access right was established by prescriptive use. While the Gabriels' complaint alleged the existence of such an easement, they presented no evidence to support that claim. The District Court determined that their right to use the common road was obtained via an agreement with Wood under § 82-2-203, MCA, which allows owners of certain mining claims to obtain a right-of-way by agreement with property owners and sets forth a remedy if an agreement cannot be reached. The Blanchards' right to use the common road also was not established by prescriptive use, but by

6

express grant in their deed. There is no basis, therefore, for appellants' argument that the presence of a gate in any way diminished their right to use the common road.

Appellants also contend that the road mentioned in the 1988 deed was the common road and, therefore, that Wood was required to keep the road free of gates pursuant to the restrictions in the deed. Wood contends that the 1988 deed does not refer to the common road.

Substantial evidence supports the District Court's determination that the easement restriction prohibiting gates in the 1988 deed does not apply to the common road. The easement contained in the 1988 deed crosses "the SE 1/4 of Section 34 and the SW 1/4 of Section 35 . . . said easement being 30 feet on each side of the centerline of the present road." Both Defendant's Exhibit B, a certificate of survey pertaining to the properties purchased by Wood, and Exhibit D, a detailed map drawn by Wood, indicate that the common road does not cross the southeast 1/4 of Section 34. Thus, the easement description contained in the 1988 deed does not match the location of the common road. Furthermore, Wood testified that the 1988 deed referred to a road he built in 1988 to access the property purchased that year. Be located that road on Exhibit D; its location corresponds to the legal description of the easement set forth in the 1988 deed. We conclude that the District Court did not err in determining that the restriction contained in the 1988 deed does not apply to the common road.

Finally, appellants assert that their right of access to the common road was intended to be clear, unqualified and unobstructed. This characterization apparently is based on the absence of any provision in the deeds indicating that gates could be placed across the common road. Absent proof that the easement specifically allows the placement of gates, appellants contend that they are entitled to an injunction, relying on Flynn v. Siren (1986), 219 Mont. 359, 711 P.2d 1371, and Stamm v. Kehrer (1986), 222 Mont. 167, 720 P.2d 1194.

In Flynn and Stamm, we recognized that the owner of land subject to an easement could not interfere with the use and rights reserved to the dominant estate:

> The owner of the servient tenement may make use of the land in any lawful manner that he chooses, which use is not inconsistent with and does not interfere with the use and right reserved to the dominant tenement or estate.

Flynn, 711 P.2d at 1372, and Stamm, 720 P.2d at 1196. Applying this principle, we affirmed district court determinations that the construction of a gate across an easement in those cases interfered with plaintiffs' use of the easement.

Our holdings in those cases, however, were fact-specific. In Flynn, we relied on uncontradicted evidence indicating that the gate created a traffic hazard, obstructed farm machinery, and prevented potential clients from reaching plaintiffs' businesses to substantiate the district court's determination that the gate interfered with the easement. 711 P.2d at 1373. In Stamm, plaintiff had acquired an easement by prescription to access her lawn and garage. We agreed with the court that the gate interfered

8

with access to the property based on her testimony that the gate was difficult to maneuver and that the adjoining fence precluded access to her yard. 720 P.2d at 1196. Neither Flynn nor Stamm stand for the proposition that the construction of a gate across an easement interferes with the use of a right-of-way as a matter of law.

Furthermore, we disagree with the thrust of appellants' argument that the absence of an express authorization to gate the common road prevents Wood from placing a gate across it. The District Court relied on Strahan v. Bush (1989), 237 Mont. 265, 773 P.2d 718, to determine that Wood was entitled to maintain gates across the common road so long as appellants continued to have reasonable access. There, we stated that when an easement is not specifically defined by the terms of the grant, the easement "need only be such as is reasonably necessary and convenient for the purpose for which it was created." Strahan, 773 P.2d at 720, citing 25 Am. Jur. 2d, Easements and Licenses, § 73, at 479. What may be considered reasonable is determined in light of the situation of the property and the surrounding circumstances. Strahan, 773 P.2d at 720.

Strahan is in accord with other jurisdictions which have held that where the placement of a gate is not expressly prohibited by the grant of an easement or impliedly prohibited by the surrounding circumstances, a gate may be constructed across the easement if it is necessary for the reasonable use of the servient estate and does not interfere with reasonable use of the right-of-way. Tanaka v.

9

Sheehan (D.C. App. 1991), 589 A.2d 391, 395; Gamburg v. Cooper (Ariz. App. 1982), 642 P.2d 890, 891; Ericsson v. Braukman (Or. App. 1992), 824 P.2d 1174, 1178; Thomas v. Mitchell (S.C. App. 1985), 336 S.E.2d 154, 155.

Thus, we examine the surrounding circumstances in the case before us to determine whether the District Court erred in determining that Wood is entitled to construct a gate across the common road pursuant to Strahan. We first address whether the maintenance of a locked gate across the common road was reasonably necessary for Wood's enjoyment of his property. Wood used his property primarily to pasture horses. Wood and his wife testified that the confinement of the horses to only a portion of the 1986 property resulted in injury to the horses and presented difficulties in watering and feeding them. Furthermore, the horses could not be confined to the 1986 property by placing cattleguards across the common road. Wood and Dr. Sidney Erickson, a veterinarian specializing in large animals, testified that horses are frequently injured attempting to cross them.

Wood's testimony also reflects the necessity of a locked gate to prevent vandalism and theft. Initially, the gate Wood placed across the common road was unlocked. According to his testimony, the unlocked gate did not prevent people from entering onto the 1986 property frequently to hold keggers or cut down trees. He also testified that trespassers had caused property damage amounting to several thousand dollars, including the burning of a corral. We conclude that a locked gate across the common road is

10

reasonably necessary for the enjoyment of Wood's property.

We next focus on whether the maintenance of a locked gate unreasonably interferes with appellants' use of the common road. Neither the Blanchards nor the Gabriels use the easement to any significant extent. The Woods testified that the Blanchards used the common road once in the spring to transport horses to summer pasture, two or three times during the summer to check on the horses, and once in the fall to retrieve the horses for hunting season. They also testified that the Gabriels used the common road only once a year in order to perform annual assessment work on their mining claims. This testimony was unrefuted.

Moreover, we observe that the District Court set forth certain standards regarding Wood's gates in order to ensure the Blanchards' and Gabriels' reasonable access. If the gate is equipped with locks, appellants must be given keys or the combination to the lock; the lock, as well as the gate, must be reasonably easy to use. We conclude that a gate conforming to these standards does not unreasonably interfere with the Blanchards' and Gabriels' access rights to the common road.

We hold that the District Court did not abuse its discretion in denying appellants' request to enjoin Wood from maintaining a locked gate across the common road.


Is David Wood entitled to reasonable attorney's fees on appeal?

Wood has requested an award of reasonable attorney's fees incurred in this appeal, asserting that the issues raised by

11

appellants are without merit. He fails to cite any legal authority whatsoever in support of such an award. We decline to consider Wood's request in the complete absence of any cited authority for an award of attorney's fees.

As a final matter, we observe that Wood has asserted a number of issues not raised by appellants. A respondent must file a notice of cross-appeal, however, to preserve issues not raised by appellant; failure to do so is fatal to respondent's claims. Neumann v. Rogstad (1988), 232 Mont. 24, 29-30, 757 P.2d 761, 765. Because Wood did not cross-appeal, we do not review these issues.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

12

October 19, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Carl A. Hatch, Esq.
Small, Hatch, Doubek & Pyfer
Livery Square, 39 Neil1 Ave.
Helena, MT 59601

Ann L. Smoyer, Esq.
Smoyer & Adams Law Firm
1085 Helena Ave.
Helena, MT 59601

P. Keith Keller
Keller, Reynolds, Drake, Johnson & Gillespie
38 South Last Chance Gulch
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy