[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
The plaintiff Orchard Place Associates, LLC (Orchard Place) owns land in downtown Greenwich bounded on the west by Greenwich Avenue and on the east by Mason Street. The defendants Briggs and Debolt ("Briggs") own an adjacent parcel of land between Greenwich Avenue and Mason Street abutting the north side of the Orchard Place parcel. The southern portion of the Briggs parcel. specifically a strip of land approximately eleven feet wide extending from Greenwich Avenue to Mason Street. is subject to an easement in favor of the Orchard Place parcel created by a deed dated April 26, 1915 from James J. Lipsett to John R. Johnson recorded at Volume 151, page 141 of the Greenwich Land Records. The language of the easement is:
 Together with the right of using in common with the granters. their heirs and assigns. a right of way or private road, eleven (11) feet wide extending through lands of the grantors along the northerly line of the premises hereby conveyed from said Greenwich Avenue to said Mason Street, as the same now exists, subject to the wall now standing thereon or any renewal thereof
(Ex. 4)
The approximately eleven-foot-wide strip of land is presently an alleyway and will be referred to as such herein.
The plaintiff claims that Briggs has obstructed the right of way by erecting an approximately seven-foot high metal gate across the alleyway on which the right of way exists and by parking cars in the alleyway. Orchard Place seeks to permanently enjoin these activities. Briggs denies the material allegations and asserts four special defenses. The matter was tried on the merits in August 2001 by the court. Post-trial submissions by the parties were not received until December.
Although counsel for the parties were tenacious advocates of their clients' positions they were, in a most professional manner, able to agree to certain key stipulations put on the record at trial's commencement which are critical to the court's consideration and determinations, and which expedited the proceedings considerably.[1]
CT Page 2554-s
The stipulations included the land descriptions, easement language and chain of title described above as well as Briggs' admission that he has obstructed the alleyway and if that obstruction is ruled illegal, there has been damage to the plaintiff for which there is no adequate remedy at law.
According to testimony and pictures, the area subject to the easement, the alleyway, is relatively unchanged for the last fifty years. (T1, 15, 16.)[2] The alleyway is paved with concrete. It is bound on both sides largely by brick buildings or a stone wall. Towards its Greenwich Avenue, or western end the second and third floors of the building owned by Briggs extend over the alleyway. Approximately in the middle of the alleyway length a doorway from the Orchard Place building to the south exits into the alleyway. This doorway is canted so that It faces in a northwesterly direction. Slightly to the east of the doorway and on the north side of the alleyway, there is a break in the retaining wall which leaves some open space on the Briggs parcel. (Exs. 1, A3-5.)
The history of the use of the alleyway in the past is the subject of somewhat conflicting testimony. The Orchard Place parcel has been, and is, used, in part, as an automobile dealership and repair facility. The western portion of the Briggs parcel has been, and is, used as a restaurant establishment now known as Sundown Saloon, with rooms above for rent. John D'Elia, a principal of Orchard Place, has worked on and around the Orchard Place premises for fifty years. He testified that when Briggs had a vehicle parked in the alleyway (usually toward the Greenwich Avenue end) and the car repair facility on the Orchard Place premises needed to use the alleyway they would simply ask Briggs to move the vehicle, and Briggs would comply. When Briggs converted a parking lot on his parcel to a commercial building, cars were more frequently parked in the alleyway.
George Briggs owns the building known as 403 Greenwich Avenue which houses the restaurant. He has operated a restaurant there for 37 years and lives on the third floor of the building for a large part of the year. He resides in Florida in the winter. Briggs testified that he has parked a motor vehicle in the alleyway, generally under the portion of 403 Greenwich Avenue which extends over the alleyway for all the time he has operated the restaurant. Since 1980 he has left his four-wheel-drive International Scout there, most of the time with a dead battery. The Scout is only operated when it is used for snow plowing. He also testified that the alleyway is an area which many pedestrians use, and in the evening it is the site of vandalism and could be a dangerous place to CT Page 2554-t walk because of darkness and uneven surfaces. In December 1998 he had erected the gate across the alleyway to block pedestrian traffic. The double gate is located on the west side of the building overhang and blocks access from Greenwich Avenue to the doorway exiting on the alleyway from Orchard Place property.
Other witnesses called by the parties generally confirmed the testimony of the party who called them. Richard Margenot, an attorney, and a nephew of John D'Elia, testified on behalf of Orchard Place. He stated he walked frequently on Mason Street and Greenwich Avenue in the area of the alleyway. Between 1991 and 1998 "[f]requently and infrequently the alleyway . . . would be clear. And on occasion, there would be a car parked in the alleyway." (T1, 79.) Before the gate went up he described that there was an occasional car in the alleyway. Afterwards, there were many more. (Id. 83-84, 87.) As an attorney, Margenot sent two letters to Briggs protesting the installation of the gate. (Exs. 7, 8.)
Richard Borowiec is an auto mechanic employed by Greenwich Honda. From 1984 to 1995 he worked for D'Elia Honda. Between 1984 and approximately 1993 he was often in the Orchard Place building and drove vehicles in and out of the building using the alleyway. Most often he would exit the repair shop and use the alleyway to get to Mason Street; however, he testified that about twice a week, for various reasons, he would use the alleyway to get to Greenwich Avenue. (Tr 2, 42.) He testified that Briggs' Scout was usually in the alleyway in the morning but then was parked off the alleyway during part of the day. (Id. 47-48.)
Charles Welker was called as a witness for Briggs. He rented a room or apartment above the restaurant at 403 Greenwich Avenue and resided there for about eight years beginning in 1989. His living area had two rooms overlooking the alleyway. Since moving to another location around 1997, he visits 403 Greenwich Avenue regularly to socialize and tend a tomato garden on the building roof. He testified that during his eight years as a tenant, one could never drive through the alleyway because of parked cars in the way. (Id. 10, 28.) He stated Briggs' Scout was always parked there. (Id. 16.)
Orchard Place seeks an order enjoining the defendants from maintaining the gate in the alleyway. The defendants have pleaded four special defenses: (1) that the gate is a reasonable use of the property; (2) that defendants are fee owners of the alleyway by operation of adverse possession; (3) that the defendants have gained a prescriptive easement to park cars on the right of way; and (4) that the plaintiffs have abandoned the right of way. The last described defense was itself expressly CT Page 2554-u abandoned in defendants' post-trial brief.
When the terms of an easement are clear and unambiguous, the easement is interpreted by examination of the intent expressed in those terms without resort to other interpretative aids. Eis v. Meyer,17 Conn. App. 664 (1989). The express terms of the right of way (quoted at p. 1 supra) do not carry any obvious ambiguity. Orchard Place is given a right to use "in common" with Briggs the alleyway as a "right of way or private road."
The court turns to the issues raised by special defenses that Briggs has gained a fee simple interest in the alleyway by adverse possession or that he has gained an easement to park cars in the alleyway by prescription. In essence, what is claimed is that the express easement has been extinguished or substantially modified by prescription.
An express easement may be lost by prescription. Russo v. Terek,7 Conn. App. 252, 255 (1986).
 An express reservation of easement may be lost by prescription. "[I]f the servient owner (the defendant here) should by adverse acts lasting through the prescriptive period obstruct the dominant owner's (the plaintiff's here) enjoyment, intending to deprive him of the easement, he may by prescription acquire the right to use his own land free from the easement.
Id. (quoting from American Brass Co. v. Serra, 104 Conn. 139 (1926); see also Public Storage v. Elliot Street, L.P., 20 Conn. App. 380 (1989)). The prescriptive period in Connecticut is fifteen years. General States § 47-37. To establish adverse or prescriptive rights, the claimed right must be exercised openly, under a claim of right and uninterruptedly for fifteen years. General Statutes § 47-37; Rochev. Fairfield, 186 Conn. 490 (1982).
Whether the actions at issue were sufficient to support prescription is a question of fact. Robert S. Weiss v. Mullins, 196 Conn. 614 (1985). A court should apply the preponderance of evidence standard of proof to a claim that an easement has been extinguished. Public Storage v. ElliotStreet, L.P., supra. This court determines that Briggs has not met that burden in attempting to show that Orchard Place's right of way had been extinguished or modified. The court credits Mr. Briggs' testimony that his International Scout was parked in, and effectively blocking motor vehicle traffic over, the right of way for substantial, and perhaps CT Page 2554-v lengthy, periods of time. However, even Briggs and Welker conceded the Scout was not an absolutely permanent fixture in the alleyway, but that at the very least it was occasionally moved and used to plow snow or to allow others to plow. Thus, the uninterrupted element is technically missing without even considering other evidence or inferences. Looking at all the evidence, the court believes It strains credulity to conclude that the Scout or other Briggs vehicles was blocking the alleyway continually for fifteen years preceding this lawsuit.
The court finds that considerably more likely than not, the alleyway was available and open for use by Orchard Place, its agents, or predecessors' vehicles on many occasions whether because the Briggs vehicles were elsewhere, or because they were moved willingly at request. This is consistent with the testimony of Borowiec who, although a former employer of D'Elia, had no apparent reason to tailor his testimony. While there was testimony by both Welker and Margenot that neither had seen anyone traverse the alleyway from end to end in a vehicle, that is not particularly relevant. The alleyway is not the best or most convenient way to get from Greenwich Avenue to Mason Street or vice versa, even if unobstructed, for it is narrow, bumpy, steep and unlit. Almost, if not all, its vehicular use would be for entrance to or exit from the Orchard Place repair facility or the back door of 403 Greenwich Avenue. The facts of this case are distinguishable from Russov. Terek, supra, and Public Storage v. Eliot Street, L.P., supra, where the loss of an easement was based on the existence of an eight-foot-wide outdoor fireplace in one case and a chain link fence in the other, both of which remained immovable and blocked the easement for the requisite period of time.
Briggs next contends that the installation of the gate across the alleyway is a reasonable use of his property and should not be enjoined. Conceding that mere is no Connecticut law directly supporting this argument, Briggs has pointed to commentary found in secondary authorities and several out-of-state cases to buttress his argument.
This court begins its analysis by reviewing Connecticut law. The express grant of the right of way states that Orchard Place may exercise the right of way "in common" with Briggs. This court interprets that phraseology to mean that both parties have the right of way and the rights of each may not be exercised in such a fashion as to unreasonably burden or impair the rights of the other. Connecticut cases have regularly recognized and restated this tenet. Kuras v. Kope, 205 Conn. 332, 341-42
(1987); Ezikovich v. Lider, 30 Conn App. 1, 5-6, cert denied,225 Conn. 913 (1993). The easement holder has all the rights necessary to CT Page 2554-w its enjoyment, but nothing more; Peterson v. Oxford, 189 Conn. 740,744-45 (1983); and what constitutes a reasonable use is a question of fact to be determined on a case by case basis, considering all the relevant circumstances. Id., 745.
The evidence in this case shows that Briggs erected the gate to discourage pedestrian traffic in the alleyway primarily during the evenings and reduce vandalism and vagrancy as well as to prevent accidents and injuries. (Tr 1, 55-59.) The evidence also shows that persons on the Orchard Place property use that portion of the alleyway leading from the door in the middle of the alleyway to Greenwich Avenue only occasionally and usually as a last resort. There are two other means of egress for vehicles from the repair facility, one of which uses the alleyway to head east toward Mason Street and is not affected by the existing gate. While using the alleyway heading west to Greenwich Avenue may not have been the first option for Orchard Place tenants since Greenwich Avenue is a busy one way street, the angle of the door canted slightly toward the Avenue doorway does make it somewhat easier to drive west than east.
The court concludes that under the above factual circumstances Briggs' installation of a gate is not an unreasonable use of his servient estate, and, provided that the means to unlock and open the gate is conveniently and always available to Orchard Place, would not unduly restrict Orchard Place's right of way. This conclusion is consistent with the Connecticut cases cited above, although there is no authority that this court is aware of which is directly on point. However, the conclusion is fully supported by authorities which Connecticut courts regularly turn to in the absence of direct precedent or controlling law in this state. For instance, the recently adopted Restatement ThirdProperty (Servitudes), § 4.9 states:
 . . . the holder of the sentient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude.
Comment c to the above section states:
 in determining whether the holder of the servient estate has unreasonably interfered with exercise of an easement, the interests of the parties must be balanced to strike a reasonable accommodation . . .
In Illustration 4 to that section, the example of a landowner using a gate across a right of way to combat vandalism, but providing the right CT Page 2554-x of way holder with a key to the gate is approved since the inconvenience to the right of way holder is not unreasonable. Other standard compilations of legal authorities reiterate similar principles. See 25 Am.Jur.2d, Easements and Licenses, § 100 (2000); Annotation,
52 A.L.R.3d 9 (both cited by plaintiff).
In addition, Briggs has cited several cases from other states which support the right of a servient owner to erect a gate across an easement if it does not unreasonably restrict the easement holders' right of way and is not prohibited by the language of the easement. These cases and others cited in the Reporter's Notes to Restatement Third supra § 4.9 are generally supportive of a court's duty to balance the parties' interests. See e.g. Tanaka v. Sheehan, 589 A.2d 391 (1991); Gabriel v.Woods, 261 Mont. 170, 862 P.2d 42 (1993) (these cases indicate that the same principles apply in rural and urban settings).
 Conclusion and Order
The court holds that Orchard Place has an express easement over the alleyway which has not been extinguished or modified by prescription or adverse possession. In connection therewith, the court finds that the parking of vehicles in the alleyway by, or with the consent of, Briggs Is unlawful. The court also holds that the installation by Briggs of a gate across the alleyway is not an unlawful use of the alleyway as long as a convenient and accessible means of opening the gate are available to the owner and authorized tenants of the Orchard Place parcel.
In accordance with the above conclusions, and upon a finding, based upon agreed facts that unlawful blockage of the alleyway constitutes irreparable harm, an injunction may issue. Therefore, the court enters the following order.
 1. The defendants Briggs, their successors and assigns and their agents are enjoined from parking any motor vehicle and from authorizing or consenting to the parking of any such vehicle in the alleyway which blocks or obstructs the right of way.
 2. The defendants may install and maintain a gate across the alleyway at their expense only under the following conditions:
 (a) if the gate is locked, or lockable, a reasonable and sufficient number of keys, key cards or other CT Page 2554-y means of unlocking the gate shall be provided to Orchard Place and its tenants, at Briggs' expense.
 (b) the gate must remain unlocked during normal business hours (9 am to 5 pm) unless expressly agreed otherwise by Briggs and Orchard Place.
____________________ ADAMS, J.