No. 05-111

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 289

JOHN L. CRAVATH, et al.,

        Plaintiffs and Respondents,

    v.

GEORGE F. ELLINGSON, et al.,

        Defendants and Appellants.


APPEAL FROM:    The District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV 91-010A,
                    Honorable Ted O. Lympus, Presiding Judge


COUNSEL OF RECORD:

        For Appellants:

                Richard DeJana, Richard DeJana & Associates, Kalispell, Montana

                Gary W. Bjelland, Jardine, Stephenson, Blewett & Weaver,
                Great Falls, Montana

        For Respondents:

                Sharon Morrison and Frank B. Morrison, Jr., Morrison & Frampton,
                Whitefish, Montana

                Michael A. Ferrington, Attorney at Law, Whitefish, Montana


                              Submitted on Briefs:  August 30, 2005

                                    Decided:  November 15, 2005

Filed:

                    _____
                                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 George Ellingson, et al. (Ellingson), appeal from the District Court's Order granting a permanent injunction.

¶2 We restate the issues raised on appeal as a single issue: whether the District Court properly granted a permanent injunction prohibiting Ellingson from using and maintaining a boat dock and ordering removal of that dock.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This case comprises the latest, but apparently not the last, chapter in a decade-long legal saga whereby the parties continue to dispute their respective rights to utilize communal lakefront property.

¶4 John Cravath, et al. (Cravath), and Ellingson own real property in the Rest Haven subdivision in Flathead County. The original developers of the subdivision, the Penwells, announced the development of the subdivision in a document known as the "Penwell Agreement" (Agreement). The Agreement included a provision reserving a "community access area" along the lakeshore for the use of owners and future purchasers of property in the Rest Haven subdivision. The pertinent provision of the Agreement, in its entirety, reads:

> THE UNDERSIGNED DO HEREBY FURTHER AGREE AND COVE-
> NANT with any and all persons or corporations who now or shall hereafter
> acquire any interest in and to [the Rest Haven subdivision] that the under-
> signed (the Penwells) will provide within the [subdivision] and within the
> boundaries of Lot 16 of Rest Haven, Flathead County, Montana, pending a
> public dedication of the same, 150 to 200 feet of Lake frontage as a common
> access area or private park for the mutual benefit and privilege of said personal
> guests for small special functions, boat dockage or motoring, but without right
> to alter, remodel, build or construct any facilities of any nature on any of said
> premises without the written consent of the undersigned, and without right to

2

exclude the use of same at any time by any other person or corporation who now or shall hereafter acquire any interest in and to the above described property. It being understood and agreed that said area so set aside by the undersigned as a common access area or private park shall be so used as any other public park may be used for any and all recreational purposes, but for the sole, use and privilege of said persons or corporation who now or shall hereafter acquire any interest in and to the above described property, and as long as said use is not detrimental, injurious or offensive to the common usage of said area by all those entitled to use the same under the terms of this Agreement.

Perceived ambiguity in the respective rights that this provision granted to Ellingson[1] and Cravath spawns the present dispute.

¶5     Litigation concerning the continuing validity of the "Penwell Agreement" began over a decade ago.   In that initial dispute, the District Court granted summary judgment to Cravath, confirming the validity of the Agreement and indicating that Cravath held an irrevocable, non-possessory interest in the "common access area."   This Court affirmed, holding (in an unpublished opinion) that "Ellingson took title to the Rest Haven property *subject to the community access rights set forth in the Penwell Agreement . . . .*"  *Cravath v. Ellingson*, 2001 MT 23N, ¶ 17 (emphasis added).

¶6     Subsequent to our decision in *Cravath*, Ellingson constructed a boat dock on the lakefront portion of lot 16.  The dock was located, at least in part, within the community access area, occupying a portion of its shoreline as well as the water immediately adjacent thereto. Ellingson intended the dock to be personal property.  Accordingly, Ellingson has required, and intends to continue to require, other Rest Haven residents to obtain permission

---

[1]Ellingson presently owns lot 16, the lot that contains the common access area.

3

to use the dock for docking their boats. Moreover, Ellingson has excluded, and intends to continue to exclude, other Rest Haven residents from using the dock, except for emergency purposes.

¶7     In response to the construction and exclusionary use of Ellingson's dock, Cravath sought and obtained a temporary restraining order and preliminary injunction from the District Court. Eventually, the District Court granted a permanent injunction in favor of Cravath, prohibiting Ellingson from using or maintaining the dock, and ordering it removed. The District Court specifically found that Ellingson installed a dock "in front of the community access area," and has not allowed the dock to be used as a communal facility, but "intend[s] to control, supervise and restrict any usage of the dock by other owners . . . ." The District Court reasoned that the Ellingson dock violates the terms of the Agreement because it "exclude[s] Plaintiffs . . . from using the dock as a community facility." The District Court concluded that further exclusion from the use of the dock would cause irreparable harm to Cravath and that monetary compensation would not provide an adequate remedy. Therefore, it granted a permanent injunction.

¶8     A group of Rest Haven residents applied for a permit to construct a dock of their own along the lakeshore within the common access area. The Flathead County Commissioners reversed the initial approval of their application for a permit. The Commissioners provided several legal bases for their decision, including a Whitefish Lakeshore Regulation that renders easement holders ineligible to obtain a lakeshore construction permit. An appeal of

4

the Commissioners' rejection of the residents' dock construction permit application is currently pending before the District Court.

## STANDARD OF REVIEW

¶9     We review a district court's grant of an injunction to determine whether the court has committed a  manifest abuse of discretion. *Shammel v. Canyon Resources*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12.  A manifest abuse of discretion is one that is obvious, evident, or unmistakable. *Shammel*, ¶ 12 (citation omitted).

## DISCUSSION

¶10     *Did the District Court err when it granted the permanent injunction?*

¶11     Ellingson argues that the District Court erred by not interpreting the Agreement as creating an easement, or something "akin to an easement," and not applying easement law to determine whether Ellingson had the right to erect and use the dock.  Ellingson notes that easement law precludes the owner of the servient estate from holding a servitude on its own land; thus the owner of the servient estate cannot simultaneously be the owner of a dominant estate.  Ellingson asserts that he owns the servient estate.   Ellingson interprets the Agreement as constraining only the actions that owners of the dominant estates may take within the communal area.  He argues that the owners of the servient estate are unrestrained by the language prohibiting exclusion of others from use of the communal area.  Accordingly, Ellingson claims that he may construct a dock and exclude others from using it.  Ellingson contends that the District Court, under the false impression that Cravath is fee owner of the communal area, has permitted him to impede Ellingson's lawful and free use

5

of his property. Finally, Ellingson apparently presumes that the District Court premised its Order entirely on the basis that his private and exclusive dock precludes Cravath from having use of a dock within the communal area. He asserts that the District Court erred by failing to recognize that Whitefish Lakeshore Regulations actually prohibit Cravath from erecting a communal dock, regardless of the existence of Ellingson's dock.

¶12 Cravath argues that the District Court properly found that Ellingson had excluded and would continue to exclude other Rest Haven residents from using the dock. Cravath maintains that the Agreement prohibits Ellingson from erecting a dock in the communal area and excluding others from using it. This interferes with Cravath's exercising the rights reserved in the Agreement, including using the communal lakeshore area for recreational water sports, swimming, and boat dockage. Cravath further contends that the Agreement's restrictions on use of the communal area by the other Rest Haven owners apply equally to Ellingson.

¶13 We will first address Ellingson's final claim of error. To support its conclusion that Ellingson's dock prevents other Rest Haven residents from using the communal area for boat docking, the District Court's Order recites a Whitefish Lake and Lakeshore Protection Regulation that allows only one dock per lakefront property ownership. Ellingson contends that a different Whitefish Lake and Lakeshore Protection Regulation precludes Cravath, an easement holder, from erecting a dock. Certain Rest Haven owners did apply for a permit to erect a dock on the communal area. The Flathead County Board of Commissioners ultimately denied this application. Appeal of their decision is presently pending in district

6

court, which has not yet reached a final decision. Accordingly, this issue is not ripe for review by this Court. *Langemo v. Montana Rail Link*, 2001 MT 273, ¶ 34, 307 Mont. 293, ¶ 34, 38 P.3d 782, ¶ 34.

¶14 Next, we address Ellingson's contention that, pursuant to our decision in *Cravath*, the respective rights of the parties must be determined by applying easement law. Ellingson bases his claim on a misreading of our language in *Cravath*. We held that "Ellingson took title to the Rest Haven property *subject to the community access rights set forth in the Penwell Agreement* and the Deed Exhibit 273." *Cravath*, ¶ 17 (emphasis added). Ellingson had argued that the access right set forth in the Agreement had later been relinquished by Penwell. In reaching our conclusion, therefore, we noted that the Agreement "indicates that the community access area or recreation area was intended to be irrevocable, akin to an easement, within the subdivision . . . ." *Cravath*, ¶ 13. When read in context, the phrase "akin to an easement" simply expands on the word irrevocable–the common access area was intended to be irrevocable, just like an easement is intended to be irrevocable. It does not, as Ellingson presumes, indicate that we held that the Agreement created a property interest "akin to an easement" in Cravath. It is not obvious that our holding in *Cravath* established the existence of an easement. The District Court did not manifestly abuse its discretion by not explicitly applying easement law to assess the respective rights of the parties to use the communal access area.

¶15 Nevertheless, the outcome of this case would not differ if easement law were to apply. Assuming, *arguendo*, that easement law does govern the respective rights of Ellingson and

Cravath to use the communal area, the District Court nonetheless reached the correct result and provided findings of fact sufficient to support this result. We have long held that the grantee of a parcel that is burdened by a servitude, including an easement, "take[s] subject to the restrictions imposed." *City of Missoula v. Mix* (1950), 123 Mont. 365, 371, 214 P.2d 212, 215 (citation omitted). Moreover, "the owner of the servient tenement may make use of the land in any lawful manner that he or she chooses, *provided that such use is not inconsistent with and does not interfere with the use and right reserved to the dominant tenement or estate*." *Mason v. Garrison*, 2000 MT 78, ¶ 47, 299 Mont. 142, ¶ 47, 998 P.2d 531, ¶ 47 (emphasis added) (citation omitted); *accord Mix*, 123 Mont. at 372, 214 P.2d at 216. In *Garrison*, an easement by reservation had provided owners within a subdivision the perpetual right to use a parking area adjacent to Flathead Lake. *Garrison*, ¶ 9. We held that the owner of the servient estate, who built two raised gardens within the parking area, had unreasonably interfered with others' right to use the easement. *Garrison*, ¶ 49. Similarly, we have held that a servient estate owner who simply closed a gate across a right-of-way easement unreasonably interfered with the use of a reserved easement for ingress and egress. *Strahan v. Bush* (1989), 237 Mont. 265, 269, 773 P.2d 718, 721. Mindful that such determinations are fact specific, *Gabriel v. Wood* (1993), 261 Mont. 170, 176, 862 P.2d 42, 46, the evidence here shows that Ellingson's erection and exclusionary use of the dock clearly interferes with the use and rights reserved to Cravath. The Penwell Agreement set aside the lake frontage, "as a common access area or private park . . . for recreation purposes . . . for small social functions, *boat dockage* or motoring," and provides that the area "shall

8

be so used as any other public park may be used *for any and all recreational purposes . . . .*" (Emphasis added.) Ellingson erected his dock within the communal area and excluded all others from using it, subject to limited exceptions. Such conduct interferes with the right reserved to other Rest Haven residents to use the communal lakeshore area for recreational purposes such as playing on the beach, swimming and docking boats. It physically prevents them from utilizing part of the reserved communal area, just as the raised gardens physically prevented use of part of the parking area and the closing of a gate physically impeded the ingress and egress of the easement holder.

¶16    Moreover, we note that the owner of the dominant estate is not required to obtain permission from the owner of the servient estate "to do what he is already legally entitled to do . . . ." *Ludwig v. Spoklie* (1996), 280 Mont. 315, 320, 930 P.2d 56, 59. Here, the Agreement specifically authorizes Cravath to use the common access area, presumably including the waters immediately abutting the dry land comprising the communal area for boat dockage. Cravath is legally entitled to use the communal area for boat dockage. Thus, Ellingson may not require Cravath to obtain permission to use a dock in the communal area, whether that dock belongs to Ellingson, Cravath, or all of the Rest Haven residents collectively. Thus, even if the Agreement created an easement, Ellingson violated the terms of the Agreement by requiring Cravath to obtain permission to use the area for boat dockage.

¶17    Finally, we note that Ellingson's argument reaches too far. Ellingson contends that the Agreement does not restrict his ability to build within the common access area or to exclude Cravath from the resultant structures. By such reasoning, Ellingson could simply

build over the entire common access area and prohibit Cravath from utilizing any of it. Obviously, such conduct would be inconsistent with the rights reserved to the Rest Haven residents by the Agreement, just as exclusion of them from a portion of the communal area interferes with such rights. Therefore, the District Court correctly held that Ellingson's erection, use and maintenance of the dock violates the Penwell Agreement.

¶18 The District Court properly held that Ellingson's use and maintenance of a private dock violated the terms of the Penwell Agreement, and properly concluded that pecuniary compensation would not provide an adequate remedy. The District Court did not manifestly abuse its discretion in enjoining Ellingson's continued use of the dock and ordering its removal.

¶19 Accordingly, we affirm.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

Justice Jim Rice specially concurring.

¶20 I concur in the result reached by the Court, but would affirm the District Court on a different basis.

11

¶21 The District Court recognized the Whitefish Lake and Lakeshore Protection Regulations in effect for this property, which provide that "only one dock is allowed per waterfront property ownership," and reasoned as follows:

> The hereinabove cited applicable Whitefish Lakeshore Regulation makes it clear that only one dock can be maintained upon one waterfront property ownership. Accordingly, under the regulations, the community access area here is entitled to only one dock thereon. By provision of the Penwell Agreement, any dock so installed must be subject to use by all of the subject lot owners equally. [Ellingsons'] conduct makes this impossible.

The "conduct" by Ellingsons which makes common use of the dock impossible is their refusal to allow the other interest-holders to use the dock for general lake access. The Penwell Agreement provided the other holders with a "common access area" for "boat dockage or motoring," but reserved to Ellingsons, as Penwell's successor, the right to control dock construction. As a consequence of the Whitefish regulations allowing only one dock to be placed on this property, Ellingsons' actions have effectively undermined the rights of the other holders under the Penwell Agreement to boat dockage. Ellingsons' steadfast refusal to allow dock access left the District Court with little choice. Quite simply, under current regulation, any dock must be available to all. If it is not, the Penwell Agreement is violated, and the District Court reasonably required the dock to come out. Another solution may have been for Ellingsons to allow general access to the dock by the other holders.

¶22 Thus, in my view, the Court's conclusion that "Ellingson erected his dock within the communal area and excluded all others from it, subject to limited exceptions[;] [s]uch conduct interferes with the right reserved to other Rest Haven residents" (¶ 15) is, without more, too broadly stated. This conduct is impermissible only because of the single-dock

12

limitation imposed by the Whitefish Lakeshore regulations. The evidence appears to support Ellingsons' contention that there is ample room along the shoreline for construction of a second dock for the other residents, which would provide the dock access granted by the Penwell Agreement, but that is not allowed under the current regulations.

¶23 Although I disagree with the Court's conclusion that construction of the dock itself by Ellingson is a violation of the Penwell Agreement, I concur with the decision of the Court to affirm the District Court.

/S/ JIM RICE

Justice Patricia O. Cotter joins the concurring opinion of Justice Rice.

/S/ PATRICIA O. COTTER

Justice John Warner joins in the concurring opinion of Justice Rice.

/S/ JOHN WARNER