DA 10-0068

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 192

JOAN Y. CLARK and VICTORIA
LYNNE SMITH,

      Plaintiffs and Appellees,

   v.

ROBERT ROY PENNOCK, MARILYN
FROST, formerly known as MARILYN
PENNOCK, DONALD R. BERNARD,
ELIZABETH P. BERNARD, JAMES C.
KOCH AND THOMAS A. KOCH,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DV 07-10689
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

         Alanah Griffith, Pape & Griffith, Bozeman, Montana

      For Appellees:

         James A. McLean, Drysdale, McLean & Willett, Bozeman, Montana

Submitted on Briefs:  July 28, 2010
Decided:  August 31, 2010

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    After a bench trial, the Fifth Judicial District Court, Jefferson County, concluded that the owners of Tract 15, Joan Clark and Victoria Smith, had a road easement over Scenic Drive, which ran through the defendant landowners' property. The court concluded that the easement language was ambiguous, and Scenic Drive provided the only reasonably necessary and convenient access to the building site on Tract 15. The defendant landowners appeal on several grounds. The issues are as follows:

¶2    Issue 1: Did the District Court err when it concluded that Clark and Smith could use Scenic Drive to access Tract 15?

¶3    Issue 2: Did the District Court abuse its discretion when it allowed Dave Albert, a surveyor, to testify about septic regulations?

¶4    Issue 3: Did the District Court err when it ordered Marilyn Frost to remove her gate from Scenic Drive?

## BACKGROUND

¶5    In 1987, Yellowstone Basin Properties (YBP) purchased Pipestone, a large parcel of land. YBP subdivided Pipestone into twenty-plus acre parcels. YBP filed Certificate of Survey (COS) No. 139926, which depicts the tracts of land at issue in this case. The COS does not depict any roads.

¶6    Two weeks after YBP filed the COS, it created and recorded a Declaration of Covenants, Conditions and Restrictions (covenants). Paragraph 7 of the covenants provides:

2

All Tract owners covenant, agree and understand that [YBP] is reserving a sixty-foot (60') easement for general ingress and egress and a general easement for public utilities across the above-described real property along the road routes set forth in the attached Exhibits, A-1, A-2, and A-3. . . . The road easement shall be thirty feet (30') on each side of the centerline of the road system to be constructed by [YBP] on said property during the calendar years 1987, 1988 and 1989, along the approximate routes set forth in the attached [exhibit].

¶7    A near copy of the exhibit is included below.[1]



¶8    Joan Clark and Victoria Smith own Tract 15. The defendant landowners' ownership of the tracts is as follows: Robert Pennock and Marilyn Frost (Frost) own Tracts 11 and 13; James and Thomas Koch own Tract 12; and Donald and Elizabeth Bernard own Tracts 7 and 10. The dashed lines running up to and along the western boundary of Tract 15 illustrate the approximate route of Prospector's Loop. The dashed lines running up to the eastern boundary of Tract 15 illustrate the approximate route of Scenic Drive. Although the map exhibit shows Scenic Drive terminating at the southern

---

[1] This copy has been altered slightly for labeling purposes; however, the arrangement of the tracts and roads has not been altered. The names of the tract owners and road names were added for this Opinion.

boundary of Tract 12, the road as built extends south past the boundary of Tract 12, runs along the western edge of Tract 13, and terminates in a cul-de-sac at the southwestern boundary of Tract 13. With the permission of the Kochs, Frost built a gate across Scenic Drive on Tract 11 for the purpose of keeping hunters off the property.

¶9 In addition to recording the covenants, YBP included language in the deeds that created an easement for ingress and egress for all tract owners in Pipestone. The deed conveys the property to the purchaser, then grants an easement with the following language:

> TOGETHER WITH all tenements, hereditaments and appurtenances thereto belonging, including any water rights appurtenant to this property, including a general non-exclusive sixty-foot (60') easement for ingress to and egress from the above-described lot or tract and a general easement for public utilities across other lots or tracts described in Certificate of Survey Numbers 139926, Folio 296B for public utilities.

¶10 Next, the deed reserves an easement to YBP, providing:

> EXCEPTED FROM THIS CONVEYANCE AND RESERVED UNTO [YBP] AND [YBP]'S SUCCESSORS AND ASSIGNS, a general non-exclusive sixty-foot (60') road easement for ingress and a general easement for public utility lines across the above-described land.
>
> *The location of all road easements shall be thirty feet (30') on each side of the center line of the road system to be constructed by [YBP] during the calendar years 1987-1988-1989. . . .* The location of said roads providing ingress and egress are set forth and governed by the Declaration of Covenants, Conditions, & Restrictions and Exhibits thereto.

(Emphasis added.) Therefore, each deed grants the purchaser an easement for ingress and egress to their property and then reserves an easement to YBP and its successors to access the property. Neither the deed nor the covenants include language that limits a

4

tract owner to one road to access a tract. In fact, several tracts currently have more than one access road.

¶11 When Clark and Smith attempted to use Scenic Drive to access Tract 15, the defendant landowners denied them access, claiming that the language of the easement specifically limited access to Tract 15 over Prospector's Loop. The defendant landowners asserted that the previous owners had complied with this language by never using Scenic Drive to access the property.

¶12 Clark and Smith filed for a declaratory judgment in February 2007, requesting the District Court to declare that the deeds and covenants created an easement for access to Tract 15 over Scenic Drive. They requested the court to enjoin Frost from blocking or denying access to Tract 15 and order her to remove the gate from Scenic Drive. Clark and Smith also moved for summary judgment, claiming that the conveying documents clearly granted to all successors-in-interest a general, nonexclusive sixty-foot easement, thereby allowing them to use all existing roads to access Tract 15. Frost filed a cross-motion for summary judgment, to which the remainder of the defendant landowners joined, claiming that the conveying documents specifically granted access to Tract 15 only over Prospector's Loop. The District Court denied summary judgment for both parties from the bench, and the case proceeded to trial.

¶13 At trial, Frost testified that the prior owners of Tract 15 never used Scenic Drive to access Tract 15. In her summary judgment affidavit, Frost stated that no roads existed on Tract 11 when she bought it in 1987. At trial, Frost testified that when she bought Tract

5

11, Scenic Drive ran through Tracts 11 and 12 and terminated at the southern boundary of Tract 12. Frost also said that the portion of Scenic Drive that extended into Tract 13 was a private driveway and not built by YBP; therefore, the deeds and covenants could not have created an easement for that portion of the road. Wayne Joyner, YBP's founder and president, testified that his intention was that Prospector's Loop would provide the only access to Tract 15, but he never told his salespeople about his intent. He could not remember whether YBP constructed the southern portion of Scenic Drive. The District Court did not find Frost's or Joyner's trial testimony credible.

¶14 Dave Albert, the land surveyor for YBP, testified that he designed the tracts to provide a building site on each tract. Albert testified that he designed the building site on the eastern portion of Tract 15 because the western portion was too steep and rocky and no good location existed for a septic system. He also said that if access to Tract 15 was limited to Prospector's Loop, he would have included that information in the covenants and on the map exhibits to protect YBP from legal claims. He testified that he would have had Scenic Drive constructed further away from Tract 15 to clearly indicate to a buyer that access was not available from Scenic Drive.

¶15 Albert also explained his methodology in locating the centerline of Scenic Drive and in determining that the eastern boundary of Tract 15 is located within thirty feet of the centerline. The defendant landowners presented testimony from their own expert, Matthew Mayberry, who testified that the centerline was not within thirty feet of Tract 15. However, Mayberry testified that he was not present when the survey was done, did

6

not draw the survey exhibit, and that Frost's survey contained a number of mistakes. The District Court found Albert's testimony credible and found that Mayberry did not locate the road as constructed.

¶16 When the District Court issued its Findings of Fact, Conclusions of Law, and Order, it found that Albert had designed Tract 15's building site on the eastern portion of the tract because there were no reasonable building sites on the westerly two-thirds of the tract due to steep terrain, large rocks, and the inability to install a septic tank drain field. The District Court found that, based on photographs of Scenic Drive, YBP built the entirety of Scenic Drive, including the portion that extends into the southwestern corner of Tract 13. The court found that the eastern boundary of Tract 15 was within thirty feet of the centerline of Scenic Drive.

¶17 The District Court concluded that an ambiguity existed (i.e., the easements were not specific) regarding access to the building sites because the determining terms were "appropriate" and "as built." Citing *Mason v. Garrison*, 2000 MT 78, 299 Mont. 142, 998 P.2d 531, the District Court concluded that Prospector's Loop was not reasonably convenient access to the building site on Tract 15 and Scenic Drive was the only reasonably necessary and convenient access. The court permanently enjoined the defendant landowners from interfering with, obstructing, or blocking access to Tract 15 over Scenic Drive. The court ordered Frost to remove the gate from Scenic Drive and enjoined her from interfering with, obstructing, or blocking access to Scenic Drive by gates, fences, or otherwise.

7

¶18    The defendant landowners appeal, arguing that the District Court erred when it concluded that Scenic Drive provided ingress and egress to Tract 15. Initially, the defendant landowners contend that the easement language is specific in nature and provides access to Tract 15 only over Prospector's Loop. In the alternative, should we affirm the District Court's conclusion that the easement language was not specific, the defendant landowners argue that the District Court misstated and misapplied *Mason* and erroneously concluded that Scenic Drive was the only reasonably necessary and convenient access to Tract 15. The defendant landowners argue that the District Court erred by not reviewing the historic use of the easement, which would reveal that allowing Clark and Smith access over Scenic Drive would cause a significant increase in the burden on their property.

¶19    The defendant landowners also appeal the District Court's decision to allow Dave Albert to testify regarding septic permit requirements because, according to the defendant landowners, Albert is not an expert in that field.

¶20    Finally, the defendant landowners argue that the District Court erred when it ordered Frost to remove the gate from Tract 11 because it concluded she had violated the covenants by blocking access to Tract 15.

## STANDARD OF REVIEW

¶21 We review a district court's findings of facts to ascertain whether they are clearly erroneous. *Combs-Demaio Living Trust v. Kilby Butte Colony, Inc.*, 2005 MT 71, ¶ 9, 326 Mont. 334, 109 P.3d 252. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *Id.* The district court is in a better position than this Court to observe the witnesses and judge their credibility. *Id.* We review a district court's conclusions of law as to whether the court's interpretation of the law is correct. *Id.*

¶22 A district court has broad discretion in ruling on the admissibility of oral testimony, and without a showing of abuse of discretion, we will not disturb the district court's ruling on appeal. *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 26, 351 Mont. 464, 215 P.3d 649.

¶23 Finally, a district court's interpretation of a restrictive covenant is a conclusion of law which we review to determine whether the court's conclusion is correct. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 12, 339 Mont. 503, 172 P.3d 94.

**DISCUSSION**

¶24 *Issue 1: Did the District Court err when it concluded that Clark and Smith could use Scenic Drive to access Tract 15?*

¶25 Section 70-17-106, MCA, governs how a servitude is to be construed and provides that "the extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." If an easement is specific in nature, the breadth

9

and scope of the easement are strictly determined by the actual terms of the grant. *Mason*, ¶ 21. Where the granting language is not specific in nature, the court must look beyond the plain language of the grant in defining the breadth and scope of the easement. *Id.* at ¶ 22. "If the easement is not specifically defined, it need only be such as is reasonably necessary and convenient for the purpose for which it was created." *Id.* (quoting *Strahan v. Bush*, 237 Mont. 265, 268, 773 P.2d 718, 720 (1989)). What may be considered reasonably necessary and convenient is determined with a view to the situation of the property and the surrounding circumstances. *Id.* In addition, we have consistently held that:

> [I]n the absence of clear specifications defining scope, no use may be made of a right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent that was contemplated at the time the easement was created . . . . One formula articulated by the authors of a treatise suggests that as conditions change, so too may the use by the dominant tenement so long as the changes are evolutionary but not revolutionary.

*Guthrie v. Hardy*, 2001 MT 122, ¶ 48, 305 Mont. 367, 28 P.3d 467 (internal citations and quotations omitted).

¶26 The defendant landowners dedicate a substantial portion of their opening appellate brief to the argument that the easement language is specific in nature and the District Court erred by looking beyond the plain language to determine what is reasonably necessary and convenient. Then, the defendant landowners shift gears and state, "the granting language is *not* specific," thus the court "must look at the historical use of the property to determine if the proposed use creates an additional burden on the servient

10

estate." (Emphasis added.) The defendant landowners cite no authority for this assertion regarding historic use. Moreover, this argument directly contradicts their previous assertion that the easement language is specific. It is not clear whether the defendant landowners' position is that the easement is specific or nonspecific. It is not this Court's obligation to guess as to an appellant's precise position or develop legal analysis that may lend support to their position. *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 82, 322 Mont. 133, 95 P.3d 671.

¶27 The District Court determined that the language of the easements was ambiguous. However, upon careful review of the record, we conclude that the easement language specifically creates a road easement over Scenic Drive for access to Tract 15. The deeds and covenants provide that road easements shall be thirty feet "on each side of the center line of the road system to be constructed by [YBP] during the calendar years 1987-1988-1989." The District Court found that the centerline of Scenic Drive, as built by YBP in 1988, was within thirty feet of Tract 15. Therefore, from the language of the deeds and covenants, it is clear that YBP contemplated that all tract owners would have access to their property over the roads as built. It is also clear that because Tract 15 is within thirty feet of the centerline of Scenic Drive as built, Clark and Smith, as tract owners in the Pipestone subdivision, may access their property over Scenic Drive. If YBP wanted to limit tract owner's access to one road, it would have said as much in the deeds and covenants.

11

¶28 Although we differ in our reasoning as to why an easement was created over Scenic Drive for access to Tract 15, we affirm the District Court's conclusion that Clark and Smith may access their property via Scenic Drive. *See Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275 (stating "[w]e will not reverse a district court when it reaches the right result, even if it reached that result for the wrong reason").

¶29 *Issue 2: Did the District Court abuse its discretion when it allowed Dave Albert, a surveyor, to testify about septic regulations?*

¶30 The defendant landowners claim that the District Court abused its discretion when it allowed Dave Albert to testify about the placement of septic systems and septic regulations when he designed the building site on Tract 15, asserting that Albert had no specialized knowledge regarding septic requirements. They assert that if Albert's septic system testimony is excluded, the District Court's findings regarding the easement are clearly erroneous because they are not supported by substantial evidence.

¶31 Dave Albert's testimony regarding septic systems is irrelevant to our conclusion that an easement was created over Scenic Drive for access to Tract 15; thus, we will not address the defendant landowners' argument that the District Court abused its discretion when it allowed him to testify.

¶32 *Issue 3: Did the District Court err when it ordered Frost to remove her gate from Scenic Drive?*

¶33 Paragraph 11 of the covenants states: "Tract owners covenant and agree that no

gates, fences or other obstructions shall be placed upon or block any access road. This restriction shall not prevent a Tract owner from placing a gate on an access road if the road terminates on that Tract owner's property." The defendant landowners assert that because Frost owns Tract 13, a termination tract, along with Tract 11, her placement of the gate on Tract 11 does not conflict with paragraph 11 of the covenants because she had the consent of the owners of Tract 12.

¶34 Frost's gate on Tract 11 violates paragraph 11 of the covenants. Tract 11 is not a termination tract. Nothing in the covenants excepts owners of more than one tract from the rule prohibiting obstructions on an access road. The District Court correctly ordered Frost to remove her gate.

## CONCLUSION

¶35 The District Court correctly determined that Clark and Smith had a road easement over Scenic Drive to access Tract 15. Tract 15 is within thirty feet of the centerline of Scenic Drive as built; therefore, according to the plain language of the deed and covenants, an easement was created for ingress and egress. The District Court did not err when it ordered Frost to remove her gate from Tract 11 because it violates the covenant prohibiting tract owners from blocking access to the tracts.

¶36 Affirmed.

/S/ MICHAEL E WHEAT

13

We Concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS